Elbert Eugene DAGLEY, Jr., et al., Appellant,

v.

HAAG ENGINEERING CO., Appellee.

No. 14–98–01053–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 23, 2000.

Bruce Feichtinger, Houston, for appellants.

James L. Sowder, Erin L. Williams, Jacquelyn Chandler, Dallas, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN and WITTIG.

## CORRECTED OPINION

MAURICE E. AMIDEI, Justice.

Appellants appeal the summary judgment granted in favor of Haag Engineering Co. in a suit arising out of the alleged wrongful denial of insurance claims under appellants' homeowner's policies for damage purportedly sustained in a hail storm. We affirm.

### Background

Appellants are owners of 45 homes, which they claim sustained significant damage as the result of a hail storm. Appellants are also policyholders with State Farm Fire and Casualty Company and

State Farm Lloyds (collectively "State Farm"). State Farm either denied appellants' claims or offered appellants' less than what they believed was, the actual damage to their homes.

State Farm hired Haag to perform certain engineering services on five homes with regard to the hail storm.[1] Prior to the storm, Haag also had provided State Farm with materials regarding the evaluation of hail storm damage. Those materials generally state that hail stones less than one inch in diameter will not cause damage to composition shingle roofs. Appellants contend that based on Haag's estimates that the hail stones were ½" to ¾" in diameter, State Farm's rejection of their claims was "preordained."

Appellants brought claims against Haag for negligence, conspiracy, tortious interference, and violations of the Texas Deceptive Trade Practices Act ("DTPA") and the Texas Insurance Code related to wrongful denial of their claims. The trial court granted summary on all of appellants' claims against Haag.[2]

## Standard of Review

To prevail on a motion for summary judgment, the defendant must establish that no material fact issue exists and it is entitled to judgment as a matter of law. *See Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex.1999). Once the defendant establishes that no genuine issue of material fact exists regarding an element of the plaintiff's claim, the plaintiff must present competent summary judgment evidence raising a fact issue on that element. *See Guest v. Cochran*, 993 S.W.2d 397, 401 (Tex.App.-Houston [14th Dist.] 1999, no pet.). In conducting this review, we take as true all evidence favor-

able to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999).

## Negligence

Appellants contend the trial court erred in granting summary judgment on their negligence claim against Haag. To prevail on a cause of action for negligence, the plaintiff must satisfy three elements: (1) a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998). The threshold issue in a negligence case is whether the defendant owed a duty to the plaintiff. *See Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999). Whether the defendant owed a duty to the plaintiff is a question of law for the court to decide from the particular facts of the case. *See Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 289 (Tex.1996).

The duty of good faith and fair dealing emanates from the special relationship between an insurer and its insured. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697–98 (Tex.1994). The special relationship exists because the insured and the insurer are parties to a contract that is the result of unequal bargaining power. *See id.* at 698. Without such a contract, there is no special relationship. *See id.* Absent privity of contract with the insured, an insurance carrier's agents or contractors owe no such duty to the insured. *See id.*

The Dallas Court of Appeals has extended the rationale of *Natividad* to negligence claims against parties not in privity of

---

1. Specifically, State Farm asked Haag: (1) to inspect two homes and provide State Farm with an engineering evaluation on those homes; (2) to evaluate one home as an appraiser; and (3) to participate in arbitration proceedings concerning two other homes.

2. The trial court initially granted summary judgment on appellants' DTPA and Insurance

Code claims. After Haag filed a supplemental motion for summary judgment, the trial court granted summary judgment on the negligence, tortious interference, and conspiracy claims, and entered an order severing appellant's claims against Haag from their remaining claims against State Farm.

contract with an insured. *See Dear v. Scottsdale Ins. Co.,* 947 S.W.2d 908, 916–17 (Tex.App.-Dallas 1997, writ denied). In *Dear,* the insured sued the independent adjuster, which the insurance company had hired, for improperly or negligently investigating its claims. *See id.* at 916. The court found that the independent adjuster, having been hired by the insurer, had no relationship with the plaintiff and, therefore, did not owe the plaintiff a duty. *See id.* at 917.[3]

The San Antonio Court of Appeals considered similar facts in a case involving both State Farm and Haag. *See Muniz v. State Farm Lloyds,* 974 S.W.2d 229 (Tex. App.-San Antonio 1998, no pet.). In *Muniz,* the dispute centered on whether damage to the plaintiff's home was covered under the homeowner's policy. *See id.* at 231. The original dispute centered on what caused the soil beneath the plaintiff's house to shift. *See id.* The plaintiffs contended that water leaking from the house's plumbing caused the clay beneath the foundation to swell, which would be covered by the policy. *See id.* State Farm claimed the shift was cause by the "inherent vice" of the neighborhood's soil, which would not be covered by the policy. *See id.* In support of its position, State Farm cited a report by Haag noting that its investigation showed the plumbing did not cause the shifting. *See id.*

The *Muniz* court noted the lack of privity between Haag and the plaintiffs, i.e., that Haag had never worked for the plaintiffs, but was acting as an agent of State Farm in investigating the plaintiffs' claim. *See id.* at 235. Relying on reasoning in *Dear,* the court found the trial court properly granted summary judgment on the plaintiffs' negligence claim because Haag owed no duty to the plaintiffs. *See id.* at 236–37.[4]

■ Here, there is no dispute that State Farm, not appellants, hired Haag to investigate appellants' storm damage claims. Finding *Dear* and *Muniz* persuasive, we conclude that Haag did not owe a duty to appellants in its investigation of their claims or providing evaluation materials to State Farm. Therefore, trial court did not err in granting summary judgment on appellants' negligence claim.

## DTPA

■ Next, appellants assert the trial court erred in granting summary judgment on their claims that Haag violated the DTPA.[5] The DTPA prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce ..." TEX. BUS. & COM.CODE ANN. § 17.46(a) (Vernon Supp.2000). To recover under the DTPA, the plaintiff must establish: (1) he was a consumer of the defendant's goods or services; (2) the defendant committed false, misleading, or deceptive acts in connection with the lease or sale of goods or services; and (3) such acts were a producing cause of actual damages to the plain-

---

3. Finding that the defendant was an independent adjuster, retained and paid by the insurer, which had never entered into a contract with the insured, and had performed its work solely in its role as an independent adjusting firm, the court determined it was an agent or independent contractor of the insurance company. *See Dear,* 947 S.W.2d at 917.

4. The *Muniz* court also noted other precedent "unfriendly" to the plaintiff's claims. *See id.* at 235–36 (citing *Bui v. St. Paul Mercury Ins. Co.,* 981 F.2d 209, 210 (5 th Cir.1993) (holding dismissal of claim of negligent investigation against an independent adjuster was proper under Texas law because the adjuster was not a party to the insurance contract and did not

owe a duty to the insured); *Hartman v. Urban,* 946 S.W.2d 546, 550 (Tex.App.-Corpus Christi 1997, no writ) (holding that an engineering company hired by a developer is not ultimately liable to the party who bought the platted piece for negligence for an inaccurate plat on the basis of lack of privity)).

5. Appellants' DTPA claims are based on Haag's allegedly engaging in an unconscionable action or course of action, representing that its services were of a particular standard when they were of another, representing that its services have characteristics and/or benefits which they do not have, and representing that an agreement confers or involves rights, remedies, or obligations which it did not have.

tiff. *See Brown v. Bank of Galveston, N.A.,* 963 S.W.2d 511, 513 (Tex.1998).

The Texas Supreme Court has found the defendant's deceptive trade act or practice is not actionable under the DTPA unless it was committed in connection with the plaintiff's transaction in goods and services. *See Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 650 (Tex.1996). The "in-connection-with" requirement imposes a limitation of liability consistent with the underlying purposes of the DTPA, i.e., to protect consumers in consumer transactions. *See id.* at 649–50.

The *Amstadt* case involved DTPA claims by homeowners against manufacturers of, and suppliers of raw material used in the manufacture of, polybutylene plumbing systems. *See id.* at 650. At issue was whether the Legislature intended that upstream suppliers of raw material and component parts be liable under the DTPA when none of their misrepresentations reached consumers. *See id.* at 647. The court found the upstream manufacturers and suppliers never directly marketed or promoted their product to the homeowners; therefore, any misrepresentations made with regard to their product were not made with the relevant consumer transactions, i.e., the purchase of the homes. *See id.* at 650–652. Although one defendant marketed the plumbing system to homebuilders, this fell short of the nexus required for DTPA liability. *See id.* at 651–52. The court's analysis applies with equal force to allegations based on misrepresentations and unconscionable acts. *See id.* at 652.

Although *Amstadt* concerns defendants who were suppliers and manufacturers, we find its underlying analysis pertinent to the facts of this case. As in *Amstadt,* none of Haag's alleged misrepresentations were directly communicated to appellants. State Farm hired Haag to investigate certain hail storm damage claims. Haag submitted its evaluation materials, findings, and opinions to State Farm, not to appellants.

Moreover, in the absence of a special relationship, Haag cannot be liable under the DTPA for its alleged improper investigation of appellants' claims. *See Dear,* 947 S.W.2d at 917 (stating the adjuster could not be liable to the plaintiff "for improper investigation and settlement advice, regardless of whether Dear phrased his allegations as negligence, bad faith, breach of contract, tortious interference, or DTPA claims"). Therefore, we find the trial court did not err in granting summary judgment on appellants' DTPA claims.

## Insurance Code

Appellants contend the trial court erred in granting summary judgment on their claim that Haag violated Article 21.21 of the Texas Insurance Code. The purpose of article 21.21 "is to regulate trade practices in the business of insurance by defining, or providing for the determination of, all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." TEX. INS.CODE ANN. art. 21.21, § 1(a) (Vernon Supp.2000). An action under article 21.21 may be maintained against "the person or persons engaging in such acts or practices." *Id.* at § 16(a). "Person" is defined as: "any individual, corporation, association, partnership, reciprocal exchange, inter-insurer, Lloyds insurer, fraternal benefit society, and any other legal entity *engaged in the business of insurance,* including agents, brokers, adjusters and life insurance counselors." *Id.* at § 2(a) (emphasis added).

Appellants argue that Haag is an entity "engaged in the business of insurance" because it was involved in the investigation of its claims and because it provided State Farm material on hail storm damage evaluation. In support of this argument, appellants cite to former Article 1.14–1, § 2(a)(6) of the Insurance Code, which provides, among other things, that "[d]irectly or indirectly acting as an agent

for or otherwise representing or aiding on behalf of another any person or insurer in the ... *investigation ... of claims ...*" is an act of the business of insurance in Texas. Act of May 28, 1987, 70[th] Leg., R.S., ch. 254, § 1, 1987 Tex. Gen. Laws 1573, *repealed by* Act of May 17, 1999, 76[th] Leg., R.S., ch. 101, § 5, 1999 Tex. Gen. Laws 528 (current version at TEX. INS.CODE ANN. § 101.051(b)(6)(G) (Vernon Supp.2000)) (emphasis added).

The Texas Supreme Court, however, holds that former article 1.14–1 does not govern the scope of the term "business of insurance" as used in article 21.21. *See Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1,* 908 S.W.2d 415, 424 (Tex.1995).[6] Therefore, the term "business of insurance" has never been defined under article 21.21. *See id.* at 420.

State Farm hired Haag to determine the extent of damage, if any, from the storm. Haag did not: (1) participate in the sale or servicing of the policies, (2) make any representations regarding the coverage of the policies, or (3) adjust any claims. As an independent firm hired to provide engineering services, it cannot be said that Haag is engaged in the business of insurance. The trial court did not err in granting summary judgment on appellants' Insurance Code claims.

### No Evidence Summary Judgment Standard of Review

■ Haag moved for summary judgment on appellants' tortious interference and conspiracy claims under Texas Rule of Civil Procedure 166a(i). On review of a "no evidence" summary judgment, the appellate court reviews the evidence in the light most favorable to the nonmovants

and disregards all evidence and inferences to the contrary. *See Blan v. Ali,* 7 S.W.3d 741, 747 (Tex.App.-Houston [14[th] Dist.] 1999, no pet.). We sustain a no evidence summary judgment if: (1) there is a complete absence of proof in a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *See id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise of suspicion of a fact. *See Isbell v. Ryan,* 983 S.W.2d 335, 338 (Tex.App.-Houston [14[th] Dist.] 1998, no pet). More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See id.*

### Tortious Interference

■ Appellants contend the trial court erred in denying their claim for tortious interference against Haag. The elements of tortious interference are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was a proximate cause of the plaintiff's damage; and (4) actual damage or loss occurred. *See Powell Indus., Inc. v. Allen,* 985 S.W.2d 455, 456 (Tex.1998).

■ Appellants contend that Haag interfered with their contracts with State Farm by preparing false reports minimizing or denying hail storm damage and preparing materials regarding hail storm damage evaluations in an attempt to justi-

---

**6.** The court noted that the purpose of former article 1.14–1, which is titled "Unauthorized Insurance," is " 'to subject certain persons and insurers to the jurisdiction of the State Board of Insurance, of proceedings before the Board, and of the courts of this state in suits by or on behalf of the state and insureds or beneficiaries under insurance contracts.' " *Great Am. Ins. Co.,* 908 S.W.2d at 422–23 (quoting former art. 1.14–1). "[T]he Legislature provides for substituted service of pro-

cess on unauthorized insurers, and 'in doing so exercises its power to protect residents of this state and to define what constitutes doing an insurance business in this state.' " *Id.* at 423 (quoting former art. 1.14–1). Nowhere in the "purpose" clause of former art. 1.14–1 did the Legislature suggest that the list of acts which constitute "doing an insurance business" is applicable throughout the Insurance Code. *See id.*

fy State Farm's refusal to pay the full policy benefits due to appellants. Appellants cite the following evidence from which they claim a reasonable inference can be drawn that Haag was aware that State Farm relied on its damage evaluations and materials in denying or minimizing claims: (1) Haag does not dispute that State Farm improperly minimized or denied appellants' damage claims; (2) Haag and State Farm have a longstanding, financially significant relationship;[7] (3) Haag knew its actions would affect State Farm's insureds; (4) Haag failed to consider certain factors in its inspection of appellants' homes; and (5) Haag provided materials that allowed State Farm to conclude, without inspection, that appellants' roofs had not sustained hail storm damage.

Because a defendant accused of tortious interference rarely admits his guilt, a plaintiff must prove his cause of action with circumstantial evidence. *See Meza v. Service Merchandise Co.*, 951 S.W.2d 149, 152 (Tex.App.-Corpus Christi 1997, pet. denied). Circumstantial evidence may raise a fact issue if, from the evidence, a reasonable person would conclude that the existence of the fact is more reasonable than its nonexistence. *See id.* The circumstances need only point to ultimate facts sought to be established with such a degree of certainty as to make the conclusion reasonably probable. *See id.*

The circumstantial evidence produced by appellants is insufficient to raise a fact issue, i.e., that a reasonable person would conclude that Haag's willful and intentional interference with appellants' homeowner's policies with State Farm is more reasonable than Haag's not interfering with their policies. Whether Haag's failure to deny appellants' allegations that State Farm im-

properly denied their claims is irrelevant; it is not necessary for Haag make this denial in defense of appellants' claim against it. Likewise, Haag knowing that its opinions and material regarding hail storm damage could affect claimants does not raise a fact issue. Because Haag was hired to perform engineering services in the evaluation of damage claims and to submit its findings to State Farm, it could reasonably assume that State Farm would rely on those findings. Finally, evidence demonstrating an extended business relationship between two entities is not sufficient to create a fact issue on the element of intent.

Moreover, absent a special relationship, Haag cannot be held liable for tortious interference. *See Dear*, 947 S.W.2d at 917 (stating the adjuster could not be liable to the plaintiff "for improper investigation and settlement advice, regardless of whether Dear phrased his allegations as negligence, bad faith, breach of contract, tortious interference, or DTPA claims"). Appellants have failed to raise a fact issue with respect to the willful and intentional interference element of their claim for tortious interference.

Appellants also complain of the affidavits of a State Farm claims adjuster and a Haag engineer submitted in support of Haag's motion for summary judgment because they are from interested witnesses and cannot be readily controverted because they go to the element of intent. Haag, however, moved for summary judgment on appellants' tortious interference claim under the no evidence summary judgment rule. Rule 166a(i) does not require us to review the affidavits submitted in support of Haag's no evidence motion for summary judgment.[8] Accordingly, we

---

**7.** Appellants allege that from 1989 through 1996, Haag received $11,000,000 from State Farm.

**8.** Even if we were to consider these affidavits, we find they could properly serve as a basis for Haag's summary judgment. We recognize that issues of intent and knowledge are not susceptible of being readily controverted and

are generally inappropriate for summary judgment. *See Frias v. Atlantic Richfield Co.*, 999 S.W.2d 97, 106 (Tex.App.-Houston [14th Dist.] 1999, pet. filed); *RRR Farms, Ltd. v. American Horse Protection Ass'n*, 957 S.W.2d 121, 132 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (finding that affidavit, which stated that defendant "never acted with the intent to prohibit the plaintiffs from entering into

find the trial court did not err in granting summary judgment on appellants' claim for tortious interference.

## Civil Conspiracy

■ Appellants claim the trial judge erred in granting summary judgment on its conspiracy claims against Haag. Civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose by unlawful means. *See Operation Rescue–Nat'l v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 975 S.W.2d 546, 553 (Tex.1998). The elements of conspiracy are: (1) two or more persons, (2) an object to be accomplished, (3) a meeting of minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages. *See id.*

■ In their first amended petition, appellants allege that State Farm and Haag conspired in the investigation of their claims in an effort "to deny Plaintiffs' the Policy benefits rightfully due Plaintiffs." "The mere agreement to resist a claim, however, is not an actionable civil conspiracy." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). For liability to attach, there must be an unlawful, overt act in furtherance of the conspiracy. *See id.* We cannot conclude that submitting a report to State Farm with a conclusion that there was no hail storm damage to appellants' homes is an unlawful, overt act to support a conspiracy. Moreover, having found that Haag is not liable to appellants on their other claims, Haag cannot be liable for conspiracy. Therefore, trial court did not err in granting summary judgment on appellants' conspiracy claim.

### Time for Discovery

In their response to Haag's no evidence motion for summary judgment, appellants objected that the motion was "premature" because adequate discovery had not been conducted and attached an affidavit from trial counsel.[9] Having considered the substantive law, however, we do not find that the trial court abused its discretion. With respect to their claim for tortious interference, appellants rely on inferences, which if carried to their full conclusion, are insufficient to establish a fact issue as to whether Haag willfully and intentionally interfered with appellants' homeowner's policies with State Farm. Appellants' conspiracy claim rests on the allegation that Haag and State Farm conspired to deny their insurance claims, which is not sufficient to establish an unlawful, overt act in furtherance of a conspiracy. *See Massey*, 652 S.W.2d at 934.

## Conclusion

In sum, we find the trial court did not err in entering summary judgment in favor of Haag on all of appellants' claims. Accordingly, the judgment of the trial court is affirmed.

any contract or business relationship" did not meet standard for readily controverted). While these affidavits are from interested witnesses, they, nonetheless, are susceptible of being readily controverted. Each affidavit is based on objective facts and in no way makes any assertions of Haag's or State Farm's intent with respect to the outcome of the evaluation of the hail storm damage or the investigation of appellants' claims.

9. By granting Haag's motion for summary judgment, the trial court implicitly overruled appellant's objection. *See* Tex. R. App. P. 33.1(a)(2)(A).